FILED

MAR 17 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

# UNITED STATES DISTRICT COURT DISTRICT OF NORTHERN OHIO

FRANK DOMINIC DUNDEE,      CASE NO. **1:22CV01351**

PLAINTIFF      JUDGE DAN AARON POLSTER

vs      MAGISTRATE JUDGE

UNIVERSITY HOSPITALS HEALTH SYSTEM, INC      THOMAS M. PARKER

DEFENDANT

## Plaintiff Frank Dundee's Motion for Summary Judgement

### INTRODUCTARY PARAGRAPH

    Now comes the plaintiff, Frank Dundee, and respectfully moves for summary judgment. As grounds, Frank Dundee states that when an employer receives a request for accommodation to reduce the risk of exposure to the coronavirus, an employer must consider this request under the ADA and engage in the interactive process to provide reasonable accommodations, barring undue hardship.

    The Court should note that by being exposed to covid in the workplace, the Plaintiff posed a "direct threat" to his own health. As explained in the EEOC guidance, the direct threat defense "requires an employer to show that the individual has a disability that poses a 'significant risk of substantial harm' to [their] own health under 29 C.F.R. section 1630.2(r)." Not only, presented on one side of the coin, does the "Direct Threat Defense" granted to employers in March, 2020,

1

1. When a party moves for summary judgment, there is no need for that party to submit "affidavits or other similar materials" to support the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

2. When an employer receives a request for accommodation to reduce the risk of exposure to the coronavirus, an employer must consider this request under the ADA and engage in the interactive process to provide reasonable accommodations, barring undue hardship. The Court should note that by being exposed to covid in the workplace, the Plaintiff posed a "direct threat" to his own health. University Hospitals did not engage in an interactive process with the Plaintiff, despite the Plaintiff's requests, as required under EEO law and the ADA, during the covid pandemic. See examples in the numbered paragraphs from the Plaintiff's initial complaint filed with the Court: paragraphs 32-4, 32-6, 32-7, 32-8, 32-9, 32-10, 32-13.

3. The ADA requires reasonable accommodations for individuals with disabilities (absent undue hardship) during a pandemic. (9) 9. 42 U.S.C. § 12112(b)(5); see also § 12111(3); 29 C.F.R. § 1630.2(r).

4. University Hospitals never claimed undue hardship under the ADA in denying or ignoring Dundee's multiple requests for the reasonable accommodation of telework from home during the covid pandemic, from February 2020 to June 2020.

5. What constitutes a "direct threat" to the workplace during the pandemic is another area, which touches on University Hospitals' decision-making process about safety measures as they considered disability accommodation requests in the first six months of the pandemic; including the need to consider what exemptions are possible to protect the

Donald Trump. **In the last Presidential election, Geauga county remained overwhelmingly Republican, 60.9% to 37.8%.** Geauga county voted Republican in every Presidential election since 2000. It is reasonable to conclude that many people in Geauga County eschewed wearing masks during the pandemic, mimicking the behavior of Donald Trump, leading to headlines like these: Headline in Geauga County Maple Leaf: ***Anti-Mask Mandate Protesters Heckle West G School Officials*** AUGUST 24, 2021 BY DIANE RYDER   Headline in Geauga County NEWS HERALD, ***Blue Lives Matter supporters rally in Chardon*** By JUSTIN RANSOM JRANSOM.COM, JUSTIN RANSOM and NEWS HERALD | newsherald@dfmdev.com |PUBLISHED: September 4, 2020 at 9:00 p.m.

b. THE PLAINTIFF'S HEALTH CONDITION: Hereditary Spastic Paraplegia, is listed by the CDC: Based on preliminary U.S. data, persons are at high risk with underlying health conditions such as : *For neurologic disorder, neurodevelopmental, and intellectual disability, the following information was specified: dementia, memory loss, or Alzheimer's disease (17); seizure disorder (5); Parkinson's disease (4); migraine/headache (4); stroke (3); autism (2); aneurysm (2); multiple sclerosis (2); neuropathy (2);* ***hereditary spastic paraplegia*** *(1); myasthenia gravis (1); intracranial hemorrhage (1); and altered mental status*

c. The Particular Job Duties and Likelihood of Exposure at Work: Dundee worked in a hospital, which served those who were severely affected by the covid

5

a reasonable accommodation that would eliminate or reduce the risk so the employee could safely perform their essential job duties.

10. At least for the duration of the COVID-19 pandemic, the EEOC's guidance broadens the ADA's protections to cover individuals with pre-existing medical conditions, even if they currently do not have a "disability" as that term is used under the act. The guidance requires employers to engage these employees in the interactive process and provide reasonable accommodations absent undue hardship. Employers should be prepared for the potentially increased need to spend time, resources and finances to work with a greater number of employees to determine and implement effective work adjustments so they will not pose a direct threat of harm to themselves due to their underlying medical conditions.

11. EEOC pandemic guidelines for the workplace state that an employer, such as UH, cannot fire an employee who has a preexisting condition that makes him more susceptible to serious illness and death from the covid virus; in fact the employer must make a reasonable accommodation such as allowing the employee to work remotely or moving his workspace away from others.

12. Since 2009, "Direct threat" is an important ADA concept during an influenza or coronavirus pandemic. *Based on guidance of the CDC and public health authorities as of **March 2020**, the COVID-19 pandemic meets the direct threat standard. The CDC and other public health authorities have acknowledged that COVID-19 is highly contagious and potentially fatal.

13. According to the EEOC, an employer should require employees who have traveled to a region experiencing widespread, ongoing community spread **or who have been exposed**

7

particles can also linger in the air after a person has left the room – they can remain airborne for hours in some cases."

17. Both Lisa Farah and Tina Creedon presented a Direct Threat, under EEOC definition, to all pharmacy staff, but especially vulnerable and high risk employees, such as Plaintiff Frank Dundee, who would have been exposed to aerosolization at shift change, on the morning of May 27, 2020. *This fact is especially egregious since under EEOC law and the ADA, Dundee presented a Direct Threat to HIMSELF, and University Hospitals was obliged to remove Dundee from the workplace.

18. Dundee sought an accommodation of telework, repeatedly, during the pandemic, months before; Dundee was never invited to participate in the ADA interactive process to discuss how, specifically, telework could be implemented, even on a temporary basis during the pandemic, in violation of the ADA.

19. University Hospitals was obligated under EEOC Law and the ADA to engage in good faith discussions specifically related to the implementation of telework as a reasonable accommodation.

20. Paragraph 32-11, from the Plaintiff's initial filing with the Court, illustrates Dundee's continued frustration with the refusal of VP of Human Resources, Heather Harmon, to never directly engage in interactive discussions of telework, "the elephant in the room," as a reasonable accommodation during the ongoing pandemic:

32-11. From: Frank Dundee <fdundee@gmail.com> Date: Thu, Mar 19, 2020 at 6:17 PM

To: Harmon, Heather (HR) <Heather.Harmon@uhhospitals.org>

*Hi Heather, Thanks for the reply, but the elephant in the room is work-from-home.*

9

accommodation to work remotely two days per week and be allowed frequent breaks while working on-site, due to her pulmonary condition which placed her at a greater risk of contracting COVID-19. Under the "direct threat" argument, because of her pulmonary condition, Moncrief was a threat to herself during the pandemic.

Under the "direct threat" argument, ISS Facility Services, Inc., was obligated to carefully assess Moncrief who had a known disability that put her at sever risk should she contract covid. ISS Facility Services, Inc., did not perform an assessment, as required under the Direct Threat Defense and therefore violated Moncrief's rights under Title I of the ADA to a reasonable accommodation.

## CONCLUSION

When an employer receives a request for accommodation to reduce the risk of exposure to the coronavirus, an employer must consider this request under the ADA and engage in the interactive process to provide reasonable accommodations, barring undue hardship. The Court should note that by being exposed to covid in the workplace, the Plaintiff posed a "direct threat" to his own health. As explained in the EEOC guidance, the direct threat defense "requires an employer to show that the individual has a disability that poses a 'significant risk of substantial harm' to [their] own health under 29 C.F.R. section 1630.2(r)." Not only, presented on one side of the coin, does the "Direct Threat Defense" granted to employers in March, 2020, provide a means for employers to protect the workplace, and their own liability, during a pandemic, but also presented on the other side of the coin, the Direct Threat Defense OBLIGATES the employer to carefully assess employees with a known disability. University Hospitals officials understood the

11

Frank Dominic Dundee, Plaintiff Pro Se

Date: 3/12/2023

7707 Amberwood Trail, Boardman, Ohio 44512   fdundee@gmail.com   330-398-8274

Frank Dunaer
7309 Amberwood Trail
Boardman, Ohio 44512



Carl B. Stokes U.S. Court
801 West Superior Ave
Cleveland, Ohio 44113