IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK DOMINIC DUNDEE, | ) | Case No. 1:22-cv-1351 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITAL HEALTH SYSTEMS, INC, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

I. **Introduction**

Before the Court are the following motions and related filings:

1) Mr. Frank Dundee's ("Mr. Dundee") motion for summary judgment (ECF Doc. 25);

2) Mr. Dundee's motions to take judicial notice (ECF Doc. 26, ECF Doc. 27);

3) Mr. Dundee's motion for leave to file supplemental pleading to be included in Mr. Dundee's motion for summary judgment (ECF Doc. 29);

4) Defendant Geauga Medical Center's/University Hospital's ("UH") motion for summary judgment (ECF Doc. 32);

5) Mr. Dundee's opposition to UH's motion for summary judgment (ECF Doc. 33);

6) Mr. Dundee's judicial notices of adjudicative facts (ECF Doc. 35, ECF Doc. 37; ECF Doc. 39);

7) UH's brief in opposition to Mr. Dundee's motions for summary judgment and all related matters (ECF Doc. 36); and

8) UH's brief in opposition to Mr. Dundee's judicial notice of adjudicative facts (ECF Doc. 38);

For the reasons explained below, the Court GRANTS Mr. Dundee's motion for leave to file supplemental pleading, which the Court reviewed (ECF Doc. 29); DENIES Mr. Dundee's motions to take judicial notice (ECF Docs. 26 and 27); DENIES Mr. Dundee's motion for summary judgment (ECF Doc. 25); and GRANTS UH's motion for summary judgment. ECF Doc. 33.

## II.     Procedural History

This is Mr. Dundee's second employment discrimination case against his now former employer, UH. He filed his first case in May 2019 asserting claims for 1) retaliation for having filed a sexual harassment complaint; 2) requiring medical examinations in violation of Title I of the ADA; and 3) discrimination and harassment for a perceived disability. The Court granted summary judgment in favor of UH on July 22, 2020, and this judgment was affirmed on appeal. *Mr. Dundee v. Lynce,* No. 20-3836, 2021 U.S. App. LEXIS 5732 (6th Cir., Feb. 25, 2021).

Mr. Dundee continued working for UH during the first case. This second case relates to UH's March 2020 response to Mr. Dundee's request for accommodation and the termination of his employment in June 2020. Mr. Dundee filed a charge of discrimination with the EEOC and received a notice of right to sue on May 9, 2022. ECF Doc. 1-1. Mr. Dundee filed his second *pro se* case on August 1, 2022 asserting claims for retaliation and failure to accommodate his request to work from home under the ADA. ECF Doc. 1.

## III.    Statement of Facts

Mr. Dundee started working as a clinical pharmacist for UH in 2010. He worked 10-hour night shifts for seven days in a row followed by seven days off. ECF Doc. 32-3, ¶6. During his shifts, Mr. Dundee was the only pharmacist on duty. ECF Doc. 32-3, ¶7. His job duties included verifying prescription orders, answering phone calls and filling orders. Mr. Dundee was required

to fill orders both directly and through an Omnicell cabinet. ECF Doc. 32-3, ¶10-11. He was required to compound sterile products in the Pharmacy and start emergency medication drips needed for critical care patients in the hospital. Mr. Dundee was also required to supervise the pharmacy technicians working with him in the pharmacy. ECF Doc. 32-3, ¶12.

In March 2018, Mr. Dundee asked Heather Harmon, an employee in UH's human resources department, to discuss accommodations for his condition of hereditary spastic paraplegia ("HSP"). ECF. Doc. 32-4. Specifically, he requested permission to work from home on a reduced eight-hour shift, processing orders and intercepting most of the phone calls. *Id.* Ms. Harmon told him to complete the required forms requesting an accommodation. *Id.*

Mr. Dundee submitted the forms to UH on July 30, 2018. ECF Doc. 32-3 at 5. Mr. Dundee stated that HSP affected his ability to "walk into work from his car," "drive the one-hour trip to and from work," and made him "susceptible to tripping and muscle relaxation." He requested a "work-from-home accommodation" and that his job duties be limited to verifying patient orders and answering phone calls. ECF Doc. 32-2 at 16. Unfortunately, UH believed Mr. Dundee's position required physical presence in the pharmacy and a work-from-home accommodation was not possible. Although UH did not challenge Mr. Dundee's claimed disability, his condition of HSP was never confirmed by his physician. Forms sent to his physician to verify his condition were never completed, and Mr. Dundee later revoked the permission he had granted UH to even communicate with his physician. ECF Doc. 32-4, ¶14.

In late August 2018, Mr. Dundee met with Ms. Harmon and his direct supervisor, Patricia Tumbush, to discuss a revised accommodation request to use his paid time off ("PTO") toward a flexible start/finish time, which would reduce the amount of time he was working per shift. Following this meeting, UH agreed to the following accommodations: 1) Mr. Dundee was

authorized to continue to use PTO to change his start/end time as long as he communicated with the appropriate parties to arrange pharmacist coverage; 2) UH provided a reserved parking space to Mr. Dundee; and 3) he was given access to four bathrooms, including one that he could use exclusively during his shift. ECF Doc. 32-3 at 5.

In her letter following the meeting, Ms. Tumbush stated that UH did not have a work from home staffing model, but UH was willing to add a technician to his shift. UH also suggested that Mr. Dundee apply for other open positions at UH or consider taking a leave of absence. ECF Doc. 32-3 at 23.

In mid-2019, Mr. Dundee again asked Ms. Tumbush and Ms. Harmon if he could work from home. Ms. Tumbush conferred with the Ohio State Pharmacy Board and UH's Information Technology department to determine whether a work from home model was an option for the position held by Mr. Dundee. The Ohio State Pharmacy Board responded that most of Mr. Dundee's job duties could not be performed at home. Ms. Tumbush and Ms. Harmon met with Mr. Dundee and explained that, after consulting with the Ohio State Pharmacy Board, UH's IT team and System Pharmacy Leadership team, UH had determined his request to work from home was not feasible. Mr. Dundee responded via e-mail thanking Ms. Tumbush and Ms. Harmon for trying [to approve the accommodation]. *See* ECF Doc. 32-3 at p. 29.

In early 2020, Mr. Dundee made another accommodation request that his 35 hour work week be reduced to 20 hours per week. UH agreed to post a part-time position to allow Mr. Dundee to reduce his hours and planned to permit him to do so when another part-time clinical pharmacist had been hired. ECF Doc. 32-3 at 7.

In March 2020, Mr. Dundee requested an accommodation because he had to walk too far to get required COVID screening.  UH approved this request by arranging for a nursing supervisor to come to Mr. Dundee's regular entrance to conduct the screening.  *Id.*

On May 27, 2020, Ms. Tumbush arrived at work early to discuss some performance issues and other scheduling matters with Mr. Dundee.  ECF Doc. 32-3 at p. 8.  Mr. Dundee, not knowing his supervisor was coming, had left five minutes early.  Mr. Dundee had not told anyone he was leaving early and had left the pharmacy without an attending pharmacist.  When Ms. Tumbush discovered Mr. Dundee had left the hospital early, she called and e-mailed him asking him to respond as soon as possible.  About 12 hours later, Mr. Dundee responded that he had left early because he was concerned about encountering two employees who he believed had been exposed to COVID-19.  ECF Doc. 32-3 at 8.  Neither of these employees tested positive for COVID-19.  ECF Doc. 32-3 at ¶ 47.

UH determined that Mr. Dundee had violated several sections of the Ohio Revised Code and Ohio Administrative Code by leaving early without informing anyone on May 27.  For this reason, it terminated Mr. Dundee's employment.  Ms. Tumbush attempted to schedule an in-person meeting with Mr. Dundee, but he refused to meet.  So, his employment was terminated by letter on June 18, 2020.  ECF Doc. 32-3 at p. 44.

Mr. Dundee's deposition was taken on May 25, 2023.  The Court notes that Mr. Dundee repeatedly invoked his Fifth Amendment right against self-incrimination and directed Defendant to rely on the pre-suit documentation of his requests for accommodation.  ECF Doc. 32-7.  Mr. Dundee is permitted to invoke the Fifth Amendment during a civil matter, but the Court could assume negative presumptions from his refusal to answer appropriate questions related to his claims.  *See Fed. Trade Comm'n v. Medicor*, LLC, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002).

For example, the Court could assume that Mr. Dundee knows that leaving the pharmacy unattended on May 27, 2020 was a very serious infraction, which could have subjected him to criminal prosecution. His refusal to answer questions about leaving early on May 27, 2020 suggests that he knew his conduct was improper. See ECF Doc. 32-7 at p. 12.

### IV. Judicial Notice

Mr. Dundee has filed numerous motions and requests for judicial notice. Fed. R. 201(b) permits a court to take judicial notice of facts "not subject to reasonable dispute because [they are] (1) generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also, Jergens v. State Dep't of Rehab & Corr. Adult Parole Auth,* 492 F. App'x 567, 569 (6th Cir. July 12, 2012). The Court is permitted to consider some of the information and arguments in Mr. Dundee's numerous judicial notice filings. However, it is not necessary for the court to take "judicial notice" of this information. A brief summary of the issues Mr. Dundee has requested the Court to judicially notice follows.

Mr. Dundee has asked the Court to take judicial notice of the following:

In ECF Doc. 15, Mr. Dundee requested the Court take notice of laws, rules, cases, information regarding the transmission of COVID-19, the Ohio State Board of Pharmacy's history of remote work and various facts related to his employment. The information in this filing is not appropriate for judicial notice. *Jergens,* 492 F. App'x at 569.

In ECF Doc. 16, Mr. Dundee explains that he is not seeking to relitigate any of the matters addressed in previous EEOC charges or his prior lawsuit. It is fine that Mr. Dundee made this clarification, but the information in this filing is not appropriate for judicial notice. *Jergens,* 492 F. App'x at 569.

In ECF Doc. 17, Mr. Dundee provides to the Court several definitions from the Ohio Revised Code, information regarding the CDC Guidelines and statements regarding the Ohio Board of Pharmacy's role.  As with his other filings, this information may not be relevant and is not appropriate for judicial notice.  *Jergens,* 492 F. App'x at 569.

In ECF Doc. 18, Mr. Dundee makes various statements regarding judicial notice, COVID-19, teleworking and various facts related to his employment.  The information in this filing is not appropriate for judicial notice.  *Jergens,* 492 F. App'x at 569.

In ECF Doc. 19, Mr. Dundee sets forth facts on which he argues the parties disagree.  These facts are not material to the issues the Court must decide, nor are they appropriate for judicial notice.

In ECF Docs. 21 and 22, Mr. Dundee expounds on his ADA related argument that he posed a "direct threat" to himself during the COVID-19 pandemic.  The information and arguments in these filings are not appropriate for judicial notice.  However, the Court does further address Mr. Dundee's "direct threat" argument below.

In ECF Doc. 26, Mr. Dundee explains why he is permitted to file a motion for summary judgment in this case and provides instruction regarding Fed. R. 56.  He also instructs the Court on the concept of a "direct threat" under the ADA and various solutions to requests for accommodation related to COVID-19.  While some of this content may be accurate, it is not applicable to Mr. Dundee's claims and/or is not the type of information of which the Court would take judicial notice.

In ECF Doc. 27, ECF Doc. 35, ECF Doc. 37 and ECF Doc. 39, Mr. Dundee asks the Court to take judicial notice of COVID-19 information specially curated by Mr. Dundee.  While

7

some of this content may be accurate, it is not applicable to Mr. Dundee's claims or appropriate for judicial notice. *Jergens,* 492 F. App'x at 569.

V. **Standard of Review**

The Court recognizes that Mr. Dundee is *pro se* and that the standard of review for *pro se* pleadings is liberal. *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011). Here, construing Mr. Dundee's filings in a liberal manner has been particularly difficult. Mr. Dundee has submitted numerous filings requesting the Court take judicial notice of information he has gleaned from unverified sources. While the Court has made every effort to fairly consider all of his filings, "the lenient treatment generally accorded *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). *Pro se* plaintiffs must still meet basic pleading requirements, and courts are not required to conjure allegations on their behalf. *See Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

Summary judgment is appropriate when there exists no genuine dispute with respect to the material facts and, in light of the facts presented, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The court may look to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits when ruling on the motion. Fed. R. Civ. P. 56(c). The facts must be viewed in the light most favorable to the non-moving party and the benefit of all reasonable inferences in favor of the non-movant must be afforded to those facts. *Id.* The mere "scintilla of evidence" within the record that militates against the overwhelming weight of contradictory corroboration does not create a genuine issue of fact. *Bible Believers v. Wayne Cty.,* 805 F.3d 228 (6th Cir. 2015), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

8

## VI. Law & Analysis

### a. Failure to Accommodate – ADA Claim

Mr. Dundee has asserted a failure to accommodate claim under the ADA. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in regard to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, "discrimination includes a failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)). Because failure-to-accommodate claims "'necessarily involve direct evidence . . . of discrimination[,]' the familiar *McDonnell-Douglas* burden-shifting framework (applicable to claims premised on indirect evidence) . . . does not apply." *Id.* (quoting *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868-69 (6th Cir. 2007)).

To establish a prima facie claim for failure to accommodate under the ADA, Mr. Dundee must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for his position, with or without reasonable accommodation; (3) UH knew or had reason to know about his disability; (4) he requested a reasonable accommodation; and (5) UH failed to provide the necessary accommodation. *Id.*; *see also Johnson v. Cleveland City School Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011). If Mr. Dundee can make this showing using direct evidence, then the burden shifts to UH to prove that the proposed accommodation would impose an undue hardship on the operation of UH's business. *Brumley*, 909 F.3d at 839 (citing *Kleiber*, 485 F.3d at 868-69).

9

Here, there is no dispute regarding Mr. Dundee's requests for accommodations or UH's attempts to accommodate them.[1] Mr. Dundee made numerous requests for accommodation– including repeated requests to work from home. The parties' filings are replete with e-mails regarding these requests. Mr. Dundee had previously teleworked for the Cleveland Clinic and felt that he should be permitted to do this for UH. He did an excellent job of arguing this point to his employer and requesting reconsiderations of UH's position regarding him working from home. UH fully engaged in this process with Mr. Dundee. However, UH believed it was statutorily required to have a pharmacist physically present in its pharmacy at all times. For additional guidance, UH communicated with the Ohio Board of Pharmacy regarding Mr. Dundee's request.

Because UH could not provide a work-from-home option for Mr. Dundee's position, it attempted to accommodate Mr. Dundee in other ways:  1) Mr. Dundee was authorized to use paid time off to change the start and end times of his shift as long as he communicated with the appropriate parties to arrange pharmacy coverage; 2) UH provided a reserved parking spot for Mr. Dundee; and 3) Mr. Dundee was given access to four bathrooms, including one that he could use exclusively during his shift. ECF Doc. 32-3. Mr. Dundee was not content with these accommodations and requested to reduce his hours. UH agreed and posted a job for a part-time pharmacist who could share his shift. *Id.*

UH makes two arguments regarding Mr. Dundee's request to work from home:
1) physical presence was an essential function of Mr. Dundee's position; and 2) his request was not reasonable. First, UH argues that Mr. Dundee would not be able to perform some of his essential functions if he were strictly working from home. UH contends a pharmacist working

---

[1] Because UH does not argue that Mr. Dundee's alleged physical limitations did not qualify as a disability under the ADA, it is unnecessary to consider whether Mr. Dundee has proven that he was disabled as defined under the Act.

10

from home would not be able to fill certain orders, compound sterile products or supervise pharmacy technicians or any controlled substances–all essential functions of a "Clinical Pharmacist." UH further argues that Ohio Rev. Code § 4729.27 required it to employ "a pharmacist to be in full and actual charge of such pharmacy." UH asserts it could not have permitted Mr. Dundee to work from home because it was required to have a pharmacist present in the pharmacy during Mr. Dundee's shift. And UH received confirmation from the Ohio Pharmacy Board that Mr. Dundee's position could not be fully performed from home.

The Court is mindful that it is not required to take UH at its word that Mr. Dundee could not work from home. "[F]ull-time presence at work is not an essential function of a job [even if] an employer says that it is. * * * Aside from being antithetical to the purpose of the ADA, it also would allow employers to negate the regulation that reasonable accommodations include leave or telework." *Hostetler*, 895 F.3d at 857; 29 C.F.R. § 1630.2(o)(2)(ii). An employer is not permitted to deny a modified work schedule as unreasonable unless the employer can show why the employee is needed on a full-time schedule; merely stating that anything less than full-time employment is *per se* unreasonable will not relieve an employer of its ADA responsibilities." *Id.*

But here, UH's requirement was not unreasonable. UH's requirement that the clinical pharmacist work *on site* was supported by the hospital's staffing needs, the Ohio Board of Pharmacy and Ohio Rev. Code § 4729.27. Moreover, UH was willing to hire another pharmacist to share Mr. Dundee's shift so that he would have more time at home. "The ADA does not obligate employers to make on-the-spot accommodations of the employee's choosing." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018). Once an employee requests an accommodation, the employer has a duty to engage in a "good faith" process and an "individualized inquiry" to "identify the precise limitations resulting from the disability and

11

potential reasonable accommodations that could overcome those limitations." *Brumley*, 909 F.3d at 840 (quoting 29 C.F.R. § 1630.2(o)(3)) (further citation omitted); see also *Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir 2018).  Here, the evidence shows that UH entered into a good faith process and attempted to provide accommodations to Mr. Dundee so that he could perform the essential functions of his position.  ECF Doc. 32-3.

Conversely, Mr. Dundee has not pointed to any evidence that UH discriminated against him on the basis of his health condition or refused to provide reasonable accommodations.  Rather, it appears that an essential function of Mr. Dundee's job was to be physically present in the hospital's pharmacy and his request to work remotely on a full-time basis was not a reasonable request for his particular position.  A request for an accommodation "is not reasonable if it requires eliminating an 'essential' function of the job." *Rorrer v. City of Stow*, 743 F.3d 1025,1039 (6th Cir. 2014) (citing 29 C.F.R. § 1630.2(o); 42 U.S.C. § 12111(8)).

In his filings, Mr. Dundee now argues that UH was required to protect him from the direct threat he was to himself during the COVID-19 pandemic.  ECF Doc. 25, see also ECF Doc. 21.  This argument lacks merit.  First, it appears to be an after-the-fact characterization of the events that took place during his final days at UH.  In his pre-termination communications with his employer, his focus was on his mobility limitations caused by HSP.  ECF Doc. 32-3 at p. 16.  Because it does not appear that Mr. Dundee even requested ADA accommodations due to COVID-19, this line of argument has no factual support.  While Mr. Dundee's fear of contracting COVID-19 may have been his reason for leaving the pharmacy five minutes early on May 27, 2020, it does not appear that he raised this concern or asked for accommodations based on

COVID-19 during his employment.² See ECF Doc. 33 at 19-23. His concerns regarding COVID-19 were not the basis of his requests for accommodation under the ADA.

Secondly, Mr. Dundee has misapplied the legal concept of "direct threat" under the ADA. 42 U.S.C. §12111(3) defines "direct threat" as a "significant risk to the health and safety of others that cannot be eliminated by reasonable accommodation." This defense applies when an employer takes adverse action against an employee because it reasonably believes the employee poses a direct threat to himself or others. In these situations, the employer does not actually violate the ADA because the disabled person is not qualified for the employment position "if he or she poses a 'direct threat' to the health or safety of others which cannot be eliminated by a reasonable accommodation." *Michael v. city of Troy Police Dep't,* 808 F.3d 304, 307 (6th Cir. Dec. 14, 2015); *Mauro v. Borgess Med. Ctr.,* 137 F.3d 398, 402 (6th Cir. 1998); see also *Holiday v. City of Chattanooga*, 206 F.3d 637, 647 n.4 (6th Cir. 2000).

Here, Mr. Dundee argues he was a direct threat to himself because he was at heightened risk of contracting COVID-19. Assuming this to be true—that he posed a direct threat to himself—Mr. Dundee would not have been qualified for his position because it required an in-person pharmacist. His argument that he was a direct threat to himself actually bolsters a determination that he was not qualified for his position under the ADA; it does not support his claim.

Mr. Dundee has failed to show that he requested a *reasonable* accommodation from UH that UH refused to provide. There are no genuine disputes with respect to the material facts related to this essential element of his failure to accommodate claim. Mr. Dundee requested

---

² The Court notes that Mr. Dundee did ask to be tested for COVID-19 at a different location. However, this request was based on the difficulty he would have walking to the location site of the testing, not to avoid contracting COVID-19. UH accommodated this request by allowing Mr. Dundee to be tested at a more convenient location.

accommodations due to his condition of HSP which affected his mobility. UH provided several accommodations for Mr. Dundee, but not his preferred accommodation of working from home. However, UH was not required to permit Mr. Dundee to work from home. UH's argument that the clinical pharmacist position required an in-person presence in the pharmacy was not arbitrary. UH explained why this position could not be performed at home, and this explanation was supported by both statute and communications from the Ohio Board of Pharmacy. For these reasons, the Court finds that UH is entitled to summary judgment on Mr. Dundee's claim for failure to accommodate under the ADA.

The same undisputed facts entitling UH to summary judgment preclude judgment in Mr. Dundee's favor on this claim. UH was willing to accommodate Mr. Dundee and provided a legitimate explanation for requiring his position to be performed in person. Mr. Dundee is not entitled to summary judgment on his claim for failure to accommodate under the ADA.

### b. Retaliation for Asserting ADA Claim

Mr. Dundee also claims that UH retaliated against him for requesting an accommodation and/or asserting a previous ADA charge. The ADA separately prohibits an employer from discriminating against "any individual because such individual has . . . made a charge . . . under this chapter." 42 U.S.C. § 12203(a). "Discrimination here means retaliation." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). Thus, an employer violates the ADA if it retaliates against an employee for requesting a reasonable accommodation. To establish a prima facie case of retaliation, Mr. Dundee must show that (i) he engaged in protected activity under the ADA, (ii) UH knew of that activity, (iii) he suffered an adverse employment action, and (iv) there was a causal connection between the protected activity and the adverse employment action. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 304 (6th Cir. 2019).

14

UH argues that there is no evidence of direct discrimination against Mr. Dundee in retaliation for his requests for accommodation. But even if there were, UH argues that there is no causal connection between Mr. Dundee's requests and his termination. UH contends the reason Mr. Dundee was fired is because he left the pharmacy unattended without communicating he was leaving. UH argues this was not pretext. UH had been cooperating with Mr. Dundee to find accommodations to help him perform the essential functions of his position.

UH contends that Mr. Dundee's conduct on May 27, 2020 was a legitimate business reason for terminating his employment. The Court agrees. Mr. Dundee made several poor decisions on May 27, 2020. He left work five minutes early. He didn't tell anyone at UH he was leaving. He didn't tell anyone at UH why he was leaving. There could have been an emergency during the time he left the pharmacy unattended. And he didn't return his supervisor's call for over 12 hours after leaving. ECF Doc. 32-3. His conduct was unacceptable and UH properly terminated his employment.

Mr. Dundee argues that UH is lying about him leaving the pharmacy unattended on May 27, 2020. He says the pharmacy was not left unattended because Ms. Tumbush arrived early and the pharmacy technician was not in the pharmacy but out doing rounds. He contends the pharmacy was only left for one minute without a pharmacist. He further argues that UH's lie about these details suggests that its reason for terminating his employment was pretextual. But UH doesn't dispute that Ms. Tumbush came to the pharmacy early. Rather, it argues that she arrived early to discuss performance issues and scheduling matters with Mr. Dundee, not to relieve him of his duties. Moreover, she could have arrived late or not at all. Her early arrival does not change the undisputed fact that Mr. Dundee left early without notifying his employer.

15

There is also no evidence that UH was looking for a pretextual reason to terminate Mr. Dundee's employment. All of the evidence shows UH was working with Mr. Dundee to accommodate his needs and requests so that he could continue to perform the essential functions of his position. To conclude otherwise would only be conjecture on the part of the Court, which is not allowed. Given the undisputed facts, the Court agrees that UH had a legitimate, non-discriminatory reason for terminating Mr. Dundee's employment and is entitled to summary judgment on Mr. Dundee's retaliation claim.

And again, the same undisputed facts entitling UH to summary judgment preclude judgment in Mr. Dundee's favor on this claim. UH terminated Mr. Dundee for a legitimate, non-discriminatory reason. There are no facts showing UH's stated reason was merely pretext or that it was retaliating against Mr. Dundee because he requested an ADA accommodation. Mr. Dundee is not entitled to summary judgment on his retaliation claim.

### c. Abuse of Process against UH Attorney Rachael Israel

Mr. Dundee's complaint is lengthy and references a claim for abuse of process. Starting at page 16, the complaint states that Rachael Israel abused process by asking Mr. Dundee a question during a deposition before he was terminated. However, at page 17, Mr. Dundee states that he is not intending to pursue the tort of abuse of process – he only recounts this experience to show "mendacity, animus and planning (lying in wait) on the part of University Hospital. Because it does not appear that Mr. Dundee intended to assert a claim for abuse of process, it is not necessary to consider it further.

**VII.   Conclusion**

Because there are no genuine disputes of material fact on any of Mr. Dundee's claims against UH, the Court GRANTS summary judgment in favor of Defendant (ECF Doc. 32) and DENIES summary judgment in favor of Plaintiff.  ECF Doc. 25.

　　　IT IS SO ORDERED.

Dated: October 6, 2023

　　　　　　　　　　　　　　　　　　　　*s/Dan Aaron Polster*
　　　　　　　　　　　　　　　　　　　　United States District Judge